IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN J. COSTELLO, and          :
MARGARET COSTELLO             :
                Plaintiffs      :
                                :
    v.                          :      3:CV-09-1246
                                :      (JUDGE VANASKIE)
GOVERNMENT EMPLOYEES INSURANCE :
COMPANY                         :
                Defendants      :

_____ MEMORANDUM _____

    This underinsured motorist insurance coverage and insurer bad faith action is before

the Court on a Motion for Judgment on the Pleadings filed by Defendant Government

Employees Insurance Company ("GEICO"). (Dkt. 10.)[1] Concluding that judgment in favor

of GEICO is warranted on the insurance policy's "regular use" exclusion and on the

statutory bad faith claim presented by Plaintiffs John J. Costello and his wife, Margaret, but

that adjudication of Mr. Costello's "reasonable expectation" of coverage claim is premature,

this Court will grant in part GEICO's motion, and schedule a conference call to establish

_____

    [1]  For the convenience of the reader of this Memorandum opinion in electronic
format, hyperlinks to the Court's record and to authority cited herein have been inserted.
The Court accepts no responsibility for, and does not endorse, any product, organization, or
content at any hyperlinked site, or at any site to which that site might be linked.  The Court
accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact
that a hyperlink ceases to work or directs the user to some other site does not affect the
opinion of the Court. The page numbers referenced in this Memorandum opinion refer to the
page number of the electronic CM/ECF record.

deadlines for discovery and submission of any additional dispositive motions in this case.

I.  BACKGROUND

Mr. Costello was employed as an Auditor II with the Auditor General's Office of the Commonwealth of Pennsylvania. On February 22, 2007, he was operating a 2003 Dodge Intrepid owned by the Commonwealth of Pennsylvania, while acting within the scope and course of his employment with the Commonwealth.  (Complaint, Dkt. 1-3, at ¶ 5.)

On that day, at approximately 1:00 p.m., while stopped at or near the intersection of Harrison Avenue and Myrtle Street, in Scranton, Pennsylvania, the Commonwealth vehicle operated by Mr. Costello was rear-ended by a car driven by Warren David Cox.  (Id. at ¶¶ 7-8.)  The accident caused serious, permanent, and disabling injuries to Mr. Costello.  (Id.)

As a result of these injuries, Mr. Costello has received medical care and been forced to incur various expenses to obtain treatment for his injuries.  (Id. at ¶ 12.)  Furthermore, Mr. Costello has lost earnings as a result of the accident and believes that he will be unable to work fully in the future.  (Id. at ¶¶ 14-15.)

Prior to the accident, "Plaintiffs had purchased private automobile insurance coverage with [GEICO] which included underinsured [motorist] ("UIM") coverage of $100,000.00 stacked coverage for 2 vehicles. . . ." (Id. at ¶ 24.)  On or before October 17, 2007, Plaintiffs notified GEICO of the February 22, 2007 motor vehicle accident and GEICO properly opened, processed, and was paying "on a first party benefit claim being made by

[Mr. Costello] for medical and wage loss benefits arising out of the subject accident." (Id. at ¶ 29.) On October 17, 2007, Plaintiffs counsel contacted GEICO to advise it of an underinsured motorist claim and to request a certified copy of Plaintiffs' personal automobile insurance policy in order to confirm what coverage was available and what procedures needed to be followed. (Id. at ¶ 30.)

On November 12, 2007, GEICO sent Plaintiffs their Declaration Sheet and a sample copy of the personal automobile insurance coverage. (Id. at ¶ 31.) That same date, GEICO raised the possibility of a "regular use" exclusion that could defeat Plaintiffs' UIM claim. (Id. at ¶ 32.)

On November 30, 2007, Plaintiffs advised GEICO that there was no Commonwealth of Pennsylvania underinsured motorist coverage for the vehicle he was operating at the time of the accident. (Id. at ¶ 33.) On December 3, 2007, Plaintiffs' counsel again requested that GEICO provide, in writing, with page citation, the policy language that established the "regular use exclusion." (Id. at ¶ 34.) On December 11, 2007, GEICO forwarded a sample policy, but did not provide in writing any type of citation, or a certified copy of Plaintiffs' personal automobile insurance policy that included a "regular use exclusion." (Id. at ¶ 35.) On January 31, February 13, and February 21, 2008, Plaintiffs' counsel again requested, in writing, that GEICO address the "regular use exclusion" language that was allegedly applicable to Plaintiffs' claim. (Id. at ¶¶ 36-39.) Finally, on March 6, 2008, GEICO directed

Plaintiffs to the policy language containing the "regular use" exclusion.

On March 11, 2008, in response to GEICO's request for information, Mr. Costello provided a written report concerning his use of the Commonwealth vehicle that he was driving at the time of the accident. (Id. at ¶ 41.) On March 20, 2008, Plaintiffs provided GEICO with "full investigative file information" concerning the February 22, 2007 accident and all pre-existing and post-accident medical records and treatment notes of Mr. Costello. (Id. at ¶ 42.) Additional information concerning this request were provided on May 28, July 11, September 15, September 16, and September 26, 2008. (Id.) On July 1, 2008, Plaintiffs gave GEICO permission to allow UIM claim handlers to review Mr. Costello's first party benefit file with GEICO. (Id. at ¶ 43.) On April 20, 2009, GEICO advised Plaintiffs that it was declining any underinsured motorist payment pursuant to the UIM Coverage Endorsement Exclusion found in section 9. (Id. at ¶ 45.)

Plaintiffs initiated this action on April 22, 2009 in the Court of Common Pleas of Lackawanna County. Plaintiffs assert claims for (1) breach of contract; (2) bad faith; and (3) loss of consortium. (Comp., Dkt. 1-3.) GEICO removed the action to this Court on June 30, 2009, based on diversity of citizenship. (Dkt. 1.)

On July 29, 2009, GEICO filed a motion for judgment on the pleadings. (Dkt. 10.) The motion has been fully briefed and is ripe for review. Oral argument was held on the motion on Friday, March 19, 2010. (Dkt. 21.)

## II. DISCUSSION

### A. Standard of Review

The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As a result of Twombly, plaintiffs are required to nudge their claims "across the line from conceivable to plausible." Id. "A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Philadelphia, 338 F. App'x 261, 264 (3d Cir. 2009).

Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefits, 998 F.2d at 1196. Additionally, "documents

whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  However, the court may not rely on other parts of the record in making its decision.  Jordan v. Fox, Rothchild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In this case, GEICO attached to its Answer to the Complaint certified copies of the automobile insurance policies purchased by Plaintiffs from May of 2005 through the date of the accident.  GEICO also attached to its responsive pleadings the transcribed testimony of Mr. Costello and other pertinent documents.  Plaintiffs do not contest the authenticity of the attachments to GEICO's Answer.  Accordingly, the contents of those documents will be considered in determining whether GEICO is entitled to judgment on the pleadings.

B.    Regular Use Exclusion

GEICO seeks judgment on the pleadings on the basis of the "regular use" exclusion. (Mt. J.P., Dkt. 11, at 10.)  It is Plaintiffs' position that the Commonwealth vehicle was not regularly used by Mr. Costello, and consequently, GEICO's reliance on the regular use exception is misplaced.  (Opp. Mt. J.P., Dkt. 14, at 19.)

"Regular use exclusions that limit UM/UIM coverage on certain vehicles . . . have been held valid under Pennsylvania law."  Decker v. Nationwide Ins. Co.,1 Pa. D. & C. 5th

147 (Pa. D. & C. 2007) (citing Prudential Prop. & Cas. Ins. Co. v. Gisler, 806 A.2d 854 (Pa. 2002)). Moreover, the regular use exclusion does not violate public policy interests. See Calhoun v. Prudential Gen. Ins. Co., 1CV04-1576, 2005 WL 1154599, *1 (M.D. Pa. May 5, 2005) (citing Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 210 (Pa. 2002)).

"'The general purpose and effect of [the regular use exclusion] is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him . . . with respect to his use of another automobile which he frequently uses or has the opportunity to do so.'" Prudential Prop. & Cas. Ins. Co. v. Peppelman, No. 02-1515, 2003 WL 25795214, at *2 (E.D. Pa. Apr. 25, 2003) (quoting Voelker v. Travelers Indem. Co., 260 F.2d 276, 278 (7th Cir. 1958). "'[I]t is the regular use of other automobiles that brings the exclusionary clause into operation, and if the insured's employer assigns him one specific automobile for regular use or a number of automobiles, any one of which may be assigned for a particular trip, the result is the same. An automobile is furnished the insured for regular use in either event.'" Peppelman, 2003 WL 25795214, at *2 (quoting Hayes v. Fireman's Fund Ins. Co., 460 P.2d 225 (Colo. 1969)). "Courts have generally found the term 'regular use' unambiguous." Peppelman, 2003 WL 25795214, at *2 (citing Nationwide Mut. Ins. Co. v. Shoemaker, 965 F. Supp. 700, 703 (E.D. Pa. 1997)). "[T]he ordinary meaning of the exclusion is that the vehicle had to be 'regularly used' or 'habitually used,' as opposed to 'occasionally or

'incidentally' used." Brink v. Erie Ins. Group, 940 A.2d 528, 533 (Pa. Super. Ct. 2008); Peppelman, 2003 WL 25795214, at *2.

"[T]he test for regular use does not consider how often a vehicle, or fleet of vehicles, was actually used, but rather considers whether this vehicle or group of vehicles was regularly available for use." Prudential Prop. & Cas. Ins. Co. v. Armstrong, No. Civ. A. 03-4575, 2004 WL 603416, at *2 (E.D. Pa. Mar. 24, 2004) (emphasis in original). "[T]he term regular use simply requires that the vehicle in question be available to the insured on a 'usual, normal or customary' basis." Id. at *4.

"Determining whether a vehicle was available for an insured's 'regular use' is a fact-intensive inquiry." Armstrong, 2004 WL 603416, at *2 (citing Hinson, 277 F. Supp. 2d at 474). But, "'where the facts are not in dispute, and reasonable minds cannot differ as to the result, the issue of coverage can be decided as a matter of law by the Court.'" Id. (quoting Crum & Forster Pers. Ins. Co. v. Travelers Corp., 631 A.2d 671, 673 (Pa. Super. Ct. 1993)).

GEICO has established that each of the policies issued from 2005 through 2007 included an exclusion from UIM coverage "[w]hen using a motor vehicle furnished for the regular use of *you, your* spouse, or a *relative* who resides in *your* household, which is not insured under this policy." (Auto. Policy Amend., Dkt. 2-3, at 6; Auto. Policy Amend. 05-06, Dkt. 2-2, at 20, 24; Auto. Policy Amend. 2006, Dkt. 2-6, at 9, 13; Auto. Policy Amend. 2006-

2007, Dkt. 2-8, at 3, 7.)[2]  At oral argument, Plaintiffs' counsel acknowledged that the "regular use" exclusion was present in the GEICO policy from the date that Plaintiffs procured coverage with GEICO.

It is undisputed that car Mr. Costello was driving was owned by the Commonwealth of Pennsylvania.  (Costello Dep., Dkt. 14-3, at 5.)  It was Mr. Costello's understanding that his use of the Commonwealth automobile was for official business purposes.  In support of the contention that Mr. Costello did not "regularly use" the Commonwealth car, he indicates that between September 2006 and mid-January 2007, he did not have a State vehicle. (Id. at 17.)  It is undisputed, however, that he was reassigned a vehicle in early 2007. During the month of February 2007, Mr. Costello had a particular car re-assigned to him and he always drove the same state car.  (Id. at 28-29.)  In fact, the vehicle that was involved in the accident had been assigned to Mr. Costello on April 1, 2005, and he had used that vehicle without interruption from April 1, 2005 until November 17, 2005.  (Id. at 34.)[3]  When Mr. Costello had a Commonwealth vehicle he would drive it from home to work,

---

[2] An Affidavit of Rachel Ball, Director of Underwriting at GEICO, states that the "copy of the amendments and policy contracts are identical to the amendments and policy contracts for policy number 4037-81-53-15 for the date of [5/1/05 to 11/1/05, 11/1/05 to 5/1/06, 5/1/06 to 11/1/06, 11/1/06 to 5/1/07] issued to John J. Costello and Margaret A. Costello."  (Ball Aff., Dkt. 2-2, at 3; Ball Aff., Dkt. 2-3, at 18; Ball Aff., Dkt. 2-5, at 7; Ball Aff. Dkt. 2-6, at 21.)

[3]  Between November 17, 2005 and February 9, 2006, Mr. Costello's state vehicle was transferred to another auditor because his mileage was too low.  (Id. at 35.)

and at the end of the day, drive it from work back home; this was a regular occurrence.  (Id. at 54-55.)  The vehicle was kept at Mr. Costello's residence.

During his deposition Mr. Costello produced documents that he had created indicating how many days during the course of each year he had used a Commonwealth vehicle.  (Dkt. 2-14, at 15-17.)  His records indicate that between June 1, 2005, and May 31, 2007, he worked 402 days and used a company vehicle 327 of those days, using his personal vehicle only 85 days.  (Id. at 16.)  Between September 14, 1998 and May 31, 2005, Plaintiff worked 1,434 days, used a company vehicle 1,410 of those days, and only used his own personal vehicle for 24 days.  (Id. at 15.)

During this eight and a half year period, Plaintiff used a Commonwealth vehicle 94.61 percent of the days he worked.[4]  Although on some of these days Plaintiff only used the vehicle to travel to and from work, on other days it was used in furtherance of his performance of auditor functions at more distant locations.  On the day of the accident, Plaintiff had driven the state car approximately 100 miles.

Mr. Costello's use of the Commonwealth vehicle, while arguably not always producing significant milage, was not infrequent or casual.  See Peppelman, 2003 WL 25795214, at *2.  Furthermore, Mr. Costello's use was not "occasional" or "incidental."  Mr.

---

[4] This percentage was determined by dividing the number of days that Mr. Costello used the state-provided car (1,737) by the number of days worked (1,836), which yields 0.94607.

Costello used the Commonwealth vehicle on 94 percent of the days he worked.  (See Dkt. 2-14, at 15-16.)  This usage is not only regular, but also habitual.  See Brink, 940 A.2d at 533.  The fact that Mr. Costello didn't use the vehicle to perform the specific duties of his job everyday is of no consequence.  Instead, the key element is the fact that Mr. Costello had regular access to a Commonwealth vehicle.  See Armstrong, 2004 WL 603416, at *2; (Dixon, Dkt. 18, at 8.)  Additionally, the fact that the vehicle had been removed from his possession in the past does not affect this Court's analysis as the vehicle was still available on a customary basis, even though it was not available every day.  See Armstrong, 2004 WL 603416, at *2.  Accordingly, the "regular use" exception clearly applies to this situation, and GEICO is entitled to a determination that UIM coverage is excluded by the "regular use" exclusion.

  C.  Reasonable Expectations

  Plaintiffs contend that the exclusion should not be enforced because the Plaintiffs reasonably expected UM/UIM coverage under the GEICO policy.  (Opp. Mt. J.P., Dkt. 14, at 26.)  In support of this claim, Plaintiffs supply an affidavit and aver that during the period of coverage they increased their UM/UIM coverage from $30,000.00 to $200,000.00, and did not sign any type of UM/UIM rejection waiver.  (Id.)

  "'The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.'  The Court must look at the totality of the

circumstances in determining what expectations are reasonable.'" Peppelman, 2003 WL 25795214, at *3 (quoting Auto. Ins. Co. of Hartford Conn. v. Currant, 994 F. Supp. 324, 328-29 (E.D. Pa. 1998) ("In determining the reasonable expectations of the insured, the courts must examine the totality of the insurance transaction involved.")). "'The purpose of underinsured motorist coverage is to protect the insured . . . from the risk that a negligent driver of another vehicle will cause injury to the insured . . . and will have inadequate liability coverage to compensate for the injuries caused by his negligence.'" Decker,1 Pa. D. & C. 5th 147 (quoting Wolgemuth v. Harleysville Mut. Ins. Co., 535 A.2d 1145, 1149 (Pa. Super. Ct. 1988)).  In Decker, the court declined to enforce a regular use exclusion in the face of evidence that the insured had been given reason to believe that he would have UIM coverage while operating a Commonwealth vehicle within the course of his employment as a State Trooper.  Judge Minora observed that "[t]he overwhelming impact of the regular use exclusion inserted by the insurer without adequately informing [the] insured of the consequences enables the defendants to seemingly comply with the statute, yet simultaneously circumvent the statutory duty to provide UM/UIM coverage to the insured who choose to elect such coverage."  Id.  The court elaborated:

> [T]he regular use exclusion effectively suspends the great majority of UM/UIM coverage for the insured employee whose office is his employer-owned vehicle and whose workday is on the road.  Permitting an insurance company to insert such a regular use exclusion in an insured employee's motor vehicle policy without consent or meaningful notification to the insured enables an insurer to thwart the statute and its scheme to protect insureds.

Id.

"'[T]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.'" Safe Auto Ins. Co. v. Berlin, No. 337WDA2009, 2010 WL 760953, at *4 (Pa. Super. Ct. Mar. 5, 2010) (quoting Bubis v. Prudential Prop. & Cas. Ins. Co., 718 A.2d 1270, 1272 (Pa. Super. Ct. 1998)).

> [A] court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous," instead, Pennsylvania courts "have affirmed that 'regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents' insurance transactions . . . are subject to a review of the totality of the underlying circumstances.

Berlin, 2010 WL 760953, at *4 (citations omitted).  Indeed, "[a]lthough the parties' reasonable expectations remain 'best evidenced by the language of the insurance policy,' a court's decision to look beyond the policy language is not erroneous under all circumstances." Id. (citations omitted).  "'The clearest of exclusions will not bind an insured where an insurer or its agents has created a reasonable expectation of coverage, and coverage may exist based upon other reasonable expectations of an insured.'" Allstate Ins. Co. v. McGovern, No. 07-2486, 2008 WL 2120722, at *2 (E.D. Pa. May 20, 2008) (quoting Hinson, 277 F. Supp. 2d at 476).

Guidance on the applicability of the reasonable expectations doctrine in the context presented here may be provided by the Commonwealth's highest court in Williams v. GEICO Insurance Co., 986 A.2d 45 (Pa. 2009).  The Supreme Court, on November 18,

13

2009, granted allowance of appeal on the following issue:

> [W]hether, under the MVFRL and our decision in Burstein v. Prudential Property & Cas. Ins. Co., 570 Pa. 177, 809 A.2d 204 (2002), the 'regular-use' exclusion to underinsured motorist coverage in an automobile insurance policy is valid where the insured is a police officer, who has sustained bodily injury in the course of performing his duties while driving a police vehicle, *for which vehicle he could not have obtained underinsured motorist coverage*.

Id. (emphasis added).

In Burstein, which sustained the validity of the regular use exclusion, the court found that the plaintiff "should have taken affirmative steps to determine whether the employer-provided vehicle was insured and, if so, with what types of coverage. This is especially glaring in view of [the plaintiff's] use of employer-provided vehicles for over eight years." Burstein, 809 A.2d at 209-10 (Pa. 2002). Burstein held "that the regularly used, non-owned car exclusion and its contractual restraint on UIM portability comport with the underlying policies of the MVFRL, which is the legislature's concern for the increasing cost of insurance and not the principle of 'maximum feasible restoration' embodied in the now defunct No-Fault Act." Nationwide Ass. Co. v. Easley, 960 A.2d 843, 847 (Pa. Super. Ct. 2008) (citing Burstein, 809 A.2d at 207 n.2, 209).

Defendant relies on the Superior Court's opinion in Williams and argues that should the Supreme Court find that the "regular use" exclusion is not valid when the vehicle operated could not have obtained underinsured motorist coverage, the holding will not be applicable in this situation. Defendant also distinguishes Williams from the case sub judice

14

by arguing that in <u>Williams</u> the Plaintiff was a first responder, and plaintiff's job as a first responder is a key element of the <u>Burstein</u> analysis.

Where the insured cannot obtain UIM coverage for the employer-provided vehicle a glaring gap in the statutorily-mandated UIM coverage occurs. In this case, it cannot be determined at the pleadings stage whether the insurer knew that Mr. Costello regularly used a Commonwealth vehicle that did not have UIM coverage for its operators. It also cannot be determined whether Mr. Costello had informed the insurer's agent of this fact, made an affirmative request for such coverage, and was assured that he would have UIM coverage when using a state car.

"When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril." <u>Tonkovic v. State Farm Mut. Auto. Ins. Co.,</u> 521 A.2d 920, 925 (Pa. 1987). Where "an individual applies and prepays for specific coverage, the insurer may not unilaterlly change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." <u>Id.</u>[5]

---

[5] As observed in <u>Decker v. Nationwide Mutual Insurance Co.,</u> 1 Pa. D. & C. 5th 147 (Pa. Com. Pl. Ct. 2007):

'Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the

In an August 21, 2009 affidavit, Mr. Costello indicated:

3.) At the time I obtained automobile insurance coverage with [GEICO], I did so over the phone with a GEICO representative and was asked and answered questions concerning the use of motor vehicles both personally and for work by both myself and my wife, Margaret Costello.

4.) In purchasing the auto insurance from [GEICO], I had requested, accepted, paid for and fully expected UM/UIM coverage to be applicable to any motor vehicle accident in which either my wife or I were injured when the third party driver had insufficient coverage to cover the extent of my injuries.

5.) At no time in the original purchase of auto insurance with [GEICO] did I reject UM/UIM coverage.

6.) During the course of renewals of my auto policy with [GEICO] I not only maintained UM/UIM coverage but actually increased the same and obtained stacking capabilities on my UM/UIM coverages.

7.) At no time during any renewal of my auto policy with [GEICO] did I reject UM/UIM coverage.

8.) At no time during my being an insured under the auto policy of insurance with [GEICO] did [GEICO] explain to me that it would claim that I was not entitled to UM/UIM coverage were I to be injured while operating a Commonwealth of Pennsylvania motor vehicle through the alleged applicability of the Regular Use Exclusion.

9.) At no time while being insured with [GEICO] from May 2005 through February 22, 2007, did [GEICO] advise, notify, alert and/or point out the Regular Use Exclusion language allegedly applicable to my policy. This is true despite the fact that [GEICO] was put on notice by me as to my driving habits and the driving habits of my wife both for work and for personal reasons when my auto policy was obtained in May, 2005.

(Costello Aff., Dkt. 14-4, at 1-3.)

---

use of lengthy, complex and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefits of the insured's lack of understanding of the transaction.'

At this stage of the litigation, adjudication of the reasonable expectations doctrine is premature. It must be borne in mind that this case is not before the Court on a summary judgment motion, but on a motion for judgment on the pleadings. A decision on the applicability of the reasonable expectations doctrine requires an examination of the "totality of the insurance transaction involved. Curran, 994 F. Supp. 2d at 328-29. Other than Mr. Costello's affidavit regarding what was discussed before signing the policy, there is no evidence concerning the communications between Plaintiffs and GEICO's agent regarding use of an employer provided car and whether the GEICO agent knew that Plaintiffs expected UIM coverage when using that vehicle. If Plaintiffs' insurance agent knew that Plaintiff regularly drove a state vehicle and assured Plaintiffs that there would be coverage under those circumstances, it is arguable that this created a reasonable expectation that Mr. Costello would be covered under the policy while he was operating the state vehicle, and that this expectation may prevail over the strict terms of the exclusion. See McGovern, 2008 WL 2120722, at *2. Accordingly, adjudication of Mr. Costello's "reasonable expectation" of coverage claim must await the development of a pertinent factual record.

D.    Bad Faith

Defendant also seeks dismissal of Plaintiffs' bad faith claim, averring that Plaintiffs cannot prove by clear and convincing evidence that GEICO acted in bad faith by denying the UIM claim. (Mt. J.P., Dkt. 11, at 18.) Pennsylvania's bad faith statute provides that if a

17

court finds that an insurer has acted in bad faith towards an insured in an action arising under an insurance policy, the court may award punitive damages, assess costs and attorneys fees, and award interest from the date the claim was made. 42 Pa. C.S.A. § 8371.

"[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Plaintiff must prove both elements of the two-part test for bad faith claims by clear and convincing evidence. Smith v. Continental Cas. Co., 347 F. App'x 812, 815 (3d Cir. 2009); Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). "The 'clear and convincing' standard requires the plaintiff to show the evidence is 'so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Jurinko v. Med. Protective Co., 305 F. App'x 13, 21 (3d Cir. 2008) (quoting In re Estate of Ficket, 337 A.2d 592, 594 (Pa. 1975)). "'Bad faith' on the part of an insurer has been defined as 'any frivolous and unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.'" Haines v. State Auto Prop. & Cas. Ins. Co., 2009 WL 1767534, at *6 (E.D. Pa. June 22, 2009) (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

18

As the "regular use" exception is applicable in this situation, has been historically enforced, and is not a violation of public policy, see Burstein, 809 A.2d at 209-10 (Pa. 2002), there is no basis to find that Defendants acted in bad faith. See Liberty Mut. Ins. Group v. Johnson, No. 2:06cv03, 2007 WL 1726518 (W.D. Pa. June 14, 2007) (dismissing bad faith counterclaim because the insurer's denial of coverage based on the "regular use" exclusion was "based on a reasonable (and correct) interpretation of case law"). Shortly after the claim was filed, GEICO brought the "regular use" exception to Plaintiffs' attention. GEICO acted reasonably in requesting and obtaining information relevant to the "regular use" exclusion.

Defendant performed a reasonable investigation into whether or not the "regular use" exception applies and no reasonable jury could find under a clear and convincing evidence standard that these actions amount to reckless disregard. The language of the policy specifically includes a "regular use" exclusion and Defendant took substantial steps in determining Mr. Costello's use of the Commonwealth vehicle. Accordingly, Defendant had a reasonable basis for denying benefits and Plaintiffs' bad faith claim will be dismissed.

E.      Loss of Consortium

In addition to seeking dismissal of Plaintiffs' breach of contract and bad faith claims, Defendants also seek dismissal of Mrs. Costello's loss of consortium claim. Plaintiffs have made clear that the loss of consortium claim is being pursued as part of the UIM claim. As

a determination of coverage on the basis of reasonable expectation is premature, the Court declines to rule on the merits of Mrs. Costello's loss of consortium claim at this time.

## III. CONCLUSION

Accordingly, for the above-stated reasons, Defendant's Motion for Judgment on the Pleadings will be granted in part. Plaintiffs' bad faith claim will be dismissed. Adjudication of Mr. Costello's reasonable expectation coverage claim is premature at this juncture.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN J. COSTELLO, and       :
MARGARET COSTELLO       :
          Plaintiffs       :
                         :
    v.                  :    3:CV-09-1246
                         :    (JUDGE VANASKIE)

GOVERNMENT EMPLOYEES INSURANCE :
COMPANY                   :
          Defendants     :


ORDER

      NOW, THIS 25th DAY OF MARCH, 2010, for the reasons set forth in the foregoing

memorandum opinion, IT IS HEREBY ORDERED THAT:

      1.  Defendant's Motion for Judgment on the Pleadings (Dkt. 10) is GRANTED IN

PART.  Plaintiffs' bad faith claim, asserted in Count II of the Complaint is DISMISSED, and

Defendant is entitled to a declaration that Mr. Costello's use of a state-provided car fell

within the coverage exclusion of "regular use" of a non-owned vehicle.

      2.  A Telephone Scheduling Conference shall be held on Tuesday, April 27, 2010,

at 2:00 p.m.  Plaintiffs' counsel is responsible for placing the call to (570) 207-5720, and all

parties should be ready to proceed before the undersigned is contacted.

                       s/ Thomas I. Vanaskie
                       Thomas I. Vanaskie
                       United States District Judge